NATHAN W. HAZEN vs. ESSEX COMPANY.

The Essex Company, chartered by St. 1845, c. 163, is not liable to an action at law for flowing land by their dam, erected in accordance with said statute ; the only remedy being that given under section eight of the act of incorporation.

SHAW, C. J.[1]  This is an action of tort at common law, in the nature of an action on the case, for raising a dam across the Merrimack River, by which a mill stream emptying into that river, above the site of said dam, was set back and overflowed, and a mill of the plaintiff situated thereon, and the mill privilege, were damaged and destroyed.  To this declaration the defendants demurred, and the plaintiff joined in demurrer.

The defendant company were chartered by an act of incorporation.  St. 1845, c. 163.  They were incorporated for the purpose of constructing a dam across the Merrimack River, and constructing one or more locks and canals in connection with said dam, to remove obstructions in said river by falls and rapids, and to create a water-power, to be used for mechanical and manufacturing purposes.

The plaintiff states in his declaration that he owns a mill situated in Andover, on a small stream flowing into the river on the south side, half a mile above the place of the defendants' dam, and that he had a right to the use of this stream at the level, at which it naturally flowed, but that the defendants, by color of an act of March 20, 1845, (the statute above mentioned,) erected a dam in the town of Lawrence, within the limits mentioned in said act, that said river was a navigable river, that by means of said dam, the defendants flowed back the waters on the wheel of the plaintiff's mill, prevented said stream from passing into Merrimack River at its natural height, &c.

The demurrer admits all the material facts that are thus set out in the declaration.  In general, an act of incorporation of

[1] BIGELOW, J., did not sit in this case.

this description is held to be a public law, to be taken notice by the court without being specially set out. But independently of that rule, in the present case, the act of incorporation is referred to in the declaration, as the authority under color of which the defendants claimed title, and, therefore, its construction and validity are put in issue and brought before the court by the demurrer.

As the owner of land through which a watercourse passes, has a right to the reasonable use of such current as it passes through his land, the plaintiff would have a good right of action, were not the erection of the dam justified by their act of incorporation. The defendants maintain that they are so justified, by an act of the legislature, exercising, as they may, the sovereign power of the state, in the right of eminent domain, to take and appropriate private property for public use; that the plaintiff's property in the mill and mill privilege was so taken, and that his remedy is by a claim for damages under the act, and not by action at common law, as for a wrongful and unwarrantable encroachment upon the plaintiff's right of property.

The plaintiff denies this right under the said charter and act of incorporation.

1. It is said it was not necessary to take this land and this mill-site of the plaintiff, because within the terms of the act, the dam might have been placed above the outlet of the particular tributary, and so it was not necessary to flow out the plaintiff's mill. But there is nothing to show that it might have been so placed, without flowing other mills, as much privileged as the plaintiff's, or, that it might have been placed so much higher up, with the advantages to navigation and the much larger mill-power of the river, for manufacturing purposes contemplated by the act.

But we think it is a fallacy to suppose that a mill or mill privilege is, in principle, exempted from being taken under the power of eminent domain over any other private property. An impression of that kind may have arisen from the rule applicable to the general mill acts. It stands on a different principle. Thus, each successive proprietor on the water-

course has an equal right to use the power of the stream through his own land, to erect a mill, which is for the general benefit; he, therefore, who first appropriates it by erecting a mill, shall be held secure against the claims of another who has not so appropriated the stream. It would afford no encouragement to the building of mills generally, if one which had been so built, could be superseded and destroyed by any other proprietor who should simply propose to build another mill. This is the sole ground on which, in the administration of the mill acts, a mill-proprietor, under a general right to erect and maintain a dam on his own land, although it may flow the land of another, cannot flow a mill already erected. But this principle can have no influence on the legislature, in determining what is necessary to be taken for public use; the value of a mill can as well be compensated in money, as that of any other property so taken. The case cited, *Springfield* v. *Connecticut River Railroad Company*, 4 Cush. 63, has no bearing on the present case.

2. It is then contended that if this act was intended to authorize the defendant company to take the mill-power and mill of the plaintiff, it was void, because it was not taken for public use, and it was not within the power of the government, in the exercise of the right of eminent domain.

This is the main question. In determining it, we must look to the declared purposes of the act, and if a public use is declared, it will be so held, unless it manifestly appears by the provisions of the act, that they can have no tendency to advance and promote such public use. The declared purposes are, to improve the navigation of Merrimack River, and to create a large mill-power for mechanical and manufacturing purposes. In general, whether a particular structure, as a bridge, or a lock, or canal or road, is for the public use, is a question for the legislature, and which may be presumed to have been correctly decided by them. *Commonwealth* v. *Breed,* 4 Pick. 463. That the improvement of the navigation of a river is done for the public use, has been too frequently decided and acted upon, to require authorities. And so to create a wholly artificial navigation by canals. The establish-

ment of a great mill-power for manufacturing purposes, as an object of great public interest, especially since manufacturing has come to be one of the great public industrial pursuits of the commonwealth, seems to have been regarded by the legislature and sanctioned by the jurisprudence of the commonwealth, and, in our judgment, rightly so, in determining what is a public use, justifying the exercise of the right of eminent domain. See *St.* 1825, *c.* 148, incorporating the *Salem Mill-Dam Corporation; Boston and Roxbury Mill-Dam Corporation* v. *Newman,* 12 Pick. 467. The acts since passed, and the cases since decided on this ground, are very numerous. That the erection of this dam would have a strong and direct tendency to advance both these public objects, there is no doubt. We are, therefore, of opinion, that the powers conferred on the corporation by this act, were so done within the scope of the authority of the legislature, and were not in violation of the constitution of the commonwealth.

3. Another objection is taken to this act, that it provides no adequate means of making compensation to private individuals, for the damage done to their property, by the erection and maintenance of the defendants' dam, and the necessary consequences thereof, in flowing their lands. If it were so, it would certainly be a very serious objection to the validity of the act. *Chadwick* v. *Proprietors of Haverhill Bridge,* 2 Dane Ab. 687; *Callender* v. *Marsh,* 1 Pick. 430. We are, then, to look at the statute, to see whether it is obnoxious to this objection. It is said that compensation for property appropriated, is a common-law right, independent of the declaration of rights. If, by this, it is intended to say, that compensation in such case is required by a plain dictate of natural justice, it must be conceded. But this right may be regulated, and the remedy made certain and definite by law. The bill of rights declares a great general principle; the particular law prescribes a practical rule, by which the remedy for the violation of right is to be sought and afforded.

The statute professes to afford a remedy in broad terms. *St.* 1845, *c.* 163, § 8. " Any person who shall be damaged in his property by said corporation, in cutting or making canals

through his lands, or by flowing the same, or in any other way in carrying into effect the powers hereby granted, unless said corporation shall, within thirty days after request in writing, pay or tender to said person a reasonable satisfaction therefor, shall have the same remedies as are provided by law, for persons damaged by railroad corporations," and it refers to Rev. Sts. *c.* 39, for such remedy. It is said this only gives a remedy on a contingency. We see no other contingency than an act to be done by the claimant himself, and one entirely within his own power, that of notifying the fact to the company, that he has sustained damage, and making a claim for it. We think this a reasonable condition. It may often happen that the party alone knows the fact, that he has sustained damage. The case may be such, that the company cannot know it without such notice from the owner. Such a provision is not to be construed as an isolated, abstract proposition, but with reference to known legal proceedings in similar cases. It seems now too late to insist, that the mode provided by law for the recovery of railroad damages, for property taken, is inadequate and unconstitutional. Then let us see how these provisions are to operate practically. The owner makes known his claim for damages in writing; the company have thirty days to examine the grounds of it. As the company must act by their agents, officers, surveyors, and engineers, and as many such claims may be made nearly at the same time, thirty days seems not to be an unreasonable time to inquire into and answer them. If within that time they make no tender, it is open to the claimant to file his complaint. If they make a tender, the claimant must accept or refuse it; if he accept it, it is a payment, and an admission that it is a reasonable satisfaction. *Volenti non fit injuria.* If he refuse, it will be because he insists that the sum tendered is not a reasonable compensation, and may proceed with his complaint to the county commissioners; and then, if the company insist that the sum was reasonable, they must make good their tender, in its legal and technical sense, as a continuing offer and readiness to pay such sum. If the commissioners should consider the tender sufficient, they would natu-

rally make it the basis of their award ; if otherwise, it is the precise case in which they are authorized to enlarge it. If still the amount awarded by them is unsatisfactory to the claimant, he has his ultimate right of appeal to a jury, upon the usual terms of making the costs abide the event of the trial The only feature in these stipulations for the compensation for private property taken, which appears to us to be novel, is the provision that the claimant shall give notice of his claim for damages, after which the company shall have thirty days in which to determine whether they will pay them, and to make a tender. This seems to us to be a convenient instrumentality by which a negotiation can be opened, and the amount of reasonable damages liquidated and paid, without the necessity of resorting to litigation, or incurring expense; and, therefore, we consider this provision of the statute reasonable and convenient.

Several other exceptions were taken to this provision for compensation ; but none, we think, which are not common, and perhaps necessary, in most cases of a similar kind, in giving a practical remedy; and none which show that this act was void, in not providing for an adequate compensation for all private property to be taken in pursuance of their act of incorporation, in carrying into effect the contemplated enterprise.

*Demurrer sustained and judgment for the defendants.*

*G. Minot,* for the plaintiff.

*E. Merwin,* for the defendants.